Yes, your honor. Good day to you. Good day to all of you, your honors. May it please the court. My name is Zachary Brugman with Pope and Associates. I would respectfully like to reserve three minutes for rebuttal. We'll try to help. Thank you, your honor. This case is about due process. We have multiple due process issues raised, but I think there's really two I'd like to focus on because I think they're very connecting. One, it's the denial of the motion to continue. I think this case could be decided on that issue alone, but the fact is our office was precluded from getting very substantial and central evidence in this case. Had we had more time, there was no continuance ever given to the respondent as the BIA erroneously concluded otherwise. We would have loved to gather more evidence that went directly to the point of what the Cuban government does to returning deportees, specifically those who've claimed asylum from the United States. When you look at the fact we were precluded from getting evidence to really support this main point of the case and the fact that the immigration judge cut off questioning on that point, AR 110 and 111 really show that key question going to the heart of the claim was not answered by respondent. The opening brief gets into that, but I think that when you look at AR 146 where the judge essentially provides his understanding of the case, that's where we appear that he cut off questioning on this central question because he had already decided the case. Could I ask you about the denial of the continuance and what the doctrinal framework should be for evaluating that claim? You've referred to due process and we have some cases that talk about it as a due process issue, but we also have some cases that just evaluate whether the IJ abused his discretion in denying continuance. How do you think we should view it? Is it a due process claim or simply an abuse of discretion or either and does it make a difference? I think each case is a little different when you're looking at what is the context of the motion to continue. The latest memorandum in terms of what is good cause for continuance, it was a DOJ IJ memo on continuances where above all due process should be respected and that would be a basis for a continuance. I think that might be the highest or strongest reason for a continuance. In other cases, it is more of a matter of discretion. In this case, we believe the IJ did both. He both violated due process and abused discretion by denying the continuance. The real clear fact here is that this petitioner, he only had three hearings. He had his first hearing by himself where he gave pleadings. He had his second hearing by himself where he submitted his I-589. There was a huge gap from the first and second hearing because venue of another, I believe, very serious due process issue in this case. There was never a change of venue made from the Department of Homeland Security to move the case from Eloy to the La Palma Detention Center, which is overseen by the Tucson Immigration Court. Because of this three to four-month delay between the first and second hearing, the judge was adamant about having the final hearing when he said it. He had three hearings. The first hearing gave pleadings. The second hearing is to submit the I-589. The third hearing was the final trial. There was no continuance granted whatsoever in the case. The BIA clearly erred in saying that the IJ gave several continuances. I think for this particular case, it is both a due process issue because the petitioner was prevented from getting evidence, and it is a discretionary, just clear error issue because the judge denied a continuance when there was never one provided. This particular judge we have many cases with, he usually gives a second master after the submission of an asylum application to receive evidence. He did not do that in this case. We were just retained shortly before the that there was no continuance ever granted. We reasonably foresaw that we would be able to get a continuance. We certainly worked with the client to get evidence, but we were unable to do so and specifically on that point of what the Cuban government does to returning deportees. I'd like to address a couple of other issues. I want to follow up with a question along these lines. If we analyze this under due process, there has to be a prejudice showing. Can you can you nail down for me a little bit what specifically is in the record to show us that the missing evidence would make a difference? Well, first of all, the judge made a statement at one point where he says there is no corroboration. I believe that's AR-63. We did corroborate the claim with at least one piece of evidence. That's the wife's statement. That's AR-157, but in terms of the judge's credibility finding, one, I don't think he viewed the evidence in the record, but two, that's his attorneys to have sufficient time to collect the evidence that went straight to the heart of his claim, which is what does the Cuban government do to returning deportees from the United States? Had we had more time, we would have sought out more corroborative affidavit statements to help us just prove our point. That's where we do believe that the respondent was greatly prejudiced by the fact we simply didn't have time to get the evidence, which then the judge says he's not credible because he didn't have the evidence that he denied the continuance, which we would have been able to get the evidence. With that said, there was still one document in the record, which I believe the judge either underweight or did not weigh at all with his statement that there was no corroboration on AR-63. Thank you. I've got a question, and don't worry about the time running. We'll make sure you get a chance to respond. I know we're cutting into the time you'd sought to reserve. This is a follow-up from Judge Hunsaker's question about the continuance depriving you of the opportunity to discover and to present evidence. You've said now a couple of times that the core of the evidence that you would like to discover and present is what happens to people who seek asylum in the United States and then are returned to Cuba. I don't see how that evidence does anything one way or the other with respect to the adverse credibility finding, because you've got an adverse credibility finding here. What did the lack of continuance do that had some effect on the evidence presented that went to the adverse credibility? Well, I do believe the respondent was credible. I get that, but I'm asking you, what evidence could you have discovered or might you have discovered that would have helped you get out from under the adverse credibility finding, which I think may be supported on the current record? Well, Your Honor, I do believe the respondent was able to dispute some of the understandings from the border interview. He was found credible by the asylum officer, but the judge's point that there was no corroboration, that really just goes hand-in-hand with the Real ID Act. And so if we were able to produce more evidence that went to the point of what the Cuban government does to returning deportees, they torture them. If we had more evidence, then the judge would not be able to say there wasn't corroboration. That's the point of my question. The adverse credibility doesn't really go to what he says the government will or will not do. The adverse credibility goes to the story he told about what happened. So he may or may not have been able to predict accurately what the Cuban government was going to do, but that's not a credibility question. I mean, I understand it's important to your case, but it doesn't really go to credibility. My understanding is the way the Real ID Act works is there's clearly testimony, which is evidence, and then you have the physical evidence to support that in this case. Because we really only had testimony, yes, there was one letter from the wife, it was primarily testimonial evidence. And so if we had more physical evidence, I think just that question is really kind of balancing both physical and testimonial evidence. And so if we had more physical evidence, which we could not get because the continuance was denied, we would have been able to provide that, and I think that would have countered any sort of concern in terms of just the sole testimonial evidence, Your Honor. Okay, thank you. No further questions at this time. Let's hear from the government, and you sought to reserve some time. We'll make sure you get to say something in rebuttal. Good afternoon, Your Honors. May it please the Court. Remy Serocha-Fodu, representing the United States Attorney General's Office. I would like to speak briefly about Petitioner's concern about the denial of the continuance, which the government believes does not control the outcome of this case. But in addressing the issue that Petitioner has stated, as Your Honors can see, Petitioner has not been able to pinpoint what document would have made an impact on the adverse credibility in this case, which he never filed a motion to reopen, to submit the additional documents that he claimed he would have needed. And again, this case does not turn on the issue of returning deportees to Cuba. Petitioner's case was based on the fact that he was harmed in Cuba because of some political opinion, an unstated political opinion. It was not until he was before the immigration judge that he brought up the issue of returning to Cuba, being deported. And the record is filled with the Department of State reports, which are the best record evidence of what goes on in a country. And so for that reason, Petitioner is not able to show prejudice on the issue of the continuance. He does say that he wanted to part of the basis for the lack of credibility finding, or the adverse credibility finding, was inconsistency between what he is said to have said. I'm sorry, Your Honor, I can't hear you. Oh, there may be a problem with your computer. I can hear very well. So can you hear me? I'm sorry, Your Honor, there's something wrong with the connection. I can't hear what you're saying at all. Yeah, so you can hear neither of us? No, I hear you now, Your Honor. I heard what you just said, but I didn't hear what you said. So let's go back to Judge Miller's question then, and then see if we can go from there. Can you hear me now? I can hear you now, yes. Okay, thank you. So what I was asking, that he says that he wanted to seek the testimony of the official who conducted the border interview. And given that part of the basis for the adverse credibility finding was the inconsistency between what he is reported to have said in the border interview and what he later said at the hearing, wouldn't the testimony of the border— I'm sorry, I don't know whether you can hear me, but I cannot make out a word of what you're saying, Your Honor. I'm really sorry. I put it off speaker. I put it to my ears, and there's some sort of problem here. Okay. Are you having the same problem hearing me? No, I can hear you, Your Honor. I can hear you. I heard what you just said. And I see that the screen is also freezing on my end. I don't know whether it's got to do with the network. Try again with Judge Miller. This is taking us extra time, but if extra time will solve the problem, not to worry about that. So let's try with Judge Miller's question again. So he says he wanted to get the testimony of the official who conducted the border interview. Wouldn't that be relevant to his credibility since the— I heard border interview and relevant to credibility, but I didn't hear anything you said. Are you asking whether the border interview was relevant to his credibility? Was that the question? He says with the continuance, he would have obtained the testimony of the official who did the border interview. Okay. Okay. I think I heard what you said. You said he would have liked to take the Yes. Yes. Okay. Your Honor, the government's position is that petitioner never, during the trial, ever mentioned that he would have liked to take the testimony of the government official. And so that issue has been waived. He had every opportunity to do so, and he did not do so. He did not object to what the border official said. He did not object to any of the statements. He did not state one specific—he did not point to one specific issue that the He had several opportunities to do that. And also, pointing to the record, Your Honor, he actually admitted to his own counsel that he did think that he had no failed harm because he was nervous. And then he also stated again that he did not understand the question and gave the wrong answer. So in essence, he admitted that the border—the recording of the border statement was correct. He has not stated on the record anywhere that there was anything wrong with the border official statement. And so, if you don't have any questions, I'd like to go on with our—the address credibility issue is what we feel is—we feel that the petitioner's testimony about the events underlying his claim, um, were riddled with inconsistencies and impossibilities. And for that reason, this petition should be denied. When he was given the opportunity to explain the discrepancies in the record, petitioner was unable to resolve them and compounded the situation by changing his testimony. And because the record as a whole does not compel a finding in his favor, the petition for review should be denied on that basis. I'd like to point to the court several—about five instances of, um, address credibility of the—where the agency found that petitioner's, um, claim, um, was, um, adverse. First, he amended the, um, asylum application to bolster his claim. He stated that initially, um, on page 318 of the administrative record that he had been the asylum application to stay was just one beating and two arrests. This, um, if he had not done so, it would have weakened his argument that he was afraid that after a third infraction, he would be like—he would be detained. Secondly, he stated that he was coming to work in Nebraska, that is page 162 of the record, and that he didn't understand. But when he was asked during his credible fair interview, he stated that he didn't understand the border patrol agents because they admitted later that the border interview was in Spanish, and that—and he also admitted that he came to the United States to work, that the statement was correct. And that's on page 115 and 116 of the administrative record. Well, um, during the— On that question, can you hear me? On that question, it seems to me, he says, well, yes, I said I was going to work, but that was not in response to a question as to why are you coming, it was in response to a question of what will you do if you are here? I'm sorry, Your Honor, what was the last part of your statement? The question, he says, was not why are you coming to the United States? The question was rather, what will you do in the United States? And he said he's going to work. That's different from saying that's why he came. Well, Your Honor, based on the record and the totality of the circumstances, the agency determined that he was stating that he came to the United States to work, and he admitted to his counsel on page 116 that the statement was correct. Page 116 of the record, he said, he said yes. So when he was asked whether he told the officer that he was here to work, is that correct? He said yes. And then later on, he said, I was asked why I was here, and I said to request asylum. So he did say yes, an unequivocal yes to that question, Your Honor. I'm not sure that question is precise enough that you can hold him to it as to say that was the reason he came. When he says it essentially at the same time in response to the question, why did you come? It's asylum. So you may have other points. That one does not strike me as terribly strong. Reasonable minds could differ on that, Your Honor. But moving on to the next issue that the agency had concerns about, he returned to Cuba twice after leaving and departed each time without incident, even though he stated that they were looking for him and they were seeking him, and he was able to go through the airport. And without incident, he visited a government office, processed paperwork for his wife. He did state that he was in hiding most of the time while he was in Cuba, but we know that that's not true, Your Honor, because he went to government offices to process his wife's paperwork. So that was also another truth which he perpetrated during his hearing. So because of the totality of the circumstances here, Your Honor, even if one of these reasons that the agency gave was not appropriate in the eyes of this court, looking at the totality of the circumstances, Your Honor, the agency's adverse credibility determination withstands review. Also, alternatively, there was a merits hearing in this case, and we believe also that the agency's decision withstands review. Petitioner never was harmed in Cuba. The harms that he suffered did not rise to the level of persecution at all. He stated that he was struck on the arm once with a knife stick. He was detained for 24 hours. They asked questions, and he was released. His father, who was also detained with him, remains in Cuba without any harm. And so these points to the fact that his arguments about any harm, future harm, are speculative at best, Your Honor. And the same thing goes with the protection for convention against torture claim, Your Honor. The record does not compel a contrary conclusion. And so we believe, Your Honor, that this petition should be denied on the basis of either one of these, the adverse credibility claim or on the merits. Any further questions from the bench? Thank you. Thank you. We took you over time. You wanted to save three minutes. We'll put three minutes on the clock for you, Mr. Brugman. Thank you, Your Honor. Firstly, I'd like to state that while we did argue past persecution in this case, we believe that the threats the petitioner received does rise to the level of persecution. We do believe there's a much stronger argument for the future infliction of persecution and torture going specifically to the point of what the Cuban government does to returning deportees. As far as the petitioner having a work visa to Mexico and returning to Cuba while he had the work visa, he was able to explain with his testimony why there was such a substantial difference. The opening brief addresses that at page seven, and that's AR 107. The petitioner stated that once you're here, once you've requested asylum in the United States, if the Cuban government were to find out, they label you as a traitor and you get accused of being a traitor. We do believe that the petitioner's fear of being tortured in Cuba is supported by objectively reasonable country condition reports. Our reply brief really focuses on this, and we go into how the petitioner's many of his statements are corroborated by the country reports. Namely, the petitioner, it would almost be certain that he would be identified when he was returned as a deportee and jailed. That's what the Cuban government does to returning deportees from the United States. The reply brief really shows how conditions in Cuban prisons are to torture and also just the likelihood of being tortured by a Cuban government official. Lastly, your honors, I like to note that we filed a motion to stay appellate proceedings in this case only last week because it only recently became clear to us that the petitioner is now eligible to adjust status based on being released from ICE detention. We respectfully request and in line with the guiding principle of immigration courts that we stay these proceedings to allow the petitioner to adjust status as a Cuban refugee. Interestingly, your honors, both the petitioner and his wife presented themselves together at the border. The petitioner's wife already has a green card. There was nothing that made the petitioner a security threat. We believe that the staying proceedings would correct this violation of fundamental fairness. Two people entering the country at the same time for one to get a green card and for one to be deported is just fundamentally unfair. Thank you, your honors. Help me understand the basis on which he would apply for adjustment of status and the basis upon which his wife did get adjustment of status. That's under the Cuban Adjustment Act. In the motion to stay, we've identified all the elements of the Cuban Adjustment Act. The most important difference between the petitioner and his wife was the petitioner's wife was paroled at the border when the couple entered the country. The petitioner was just recently paroled after a Why are you only now asking for adjustment of status? It sounds as though so far from what you've told me that if he's entitled to adjustment of status now, he wasn't just entitled then, based on the fact he was from Cuba. I don't understand. It's only when you're paroled. You're only entitled to apply for the Cuban Adjustment Act when you're paroled or admitted by the U.S. government. It was just this January 4, 2021 decision by a very respectable immigration judge out of Florida who I think has now pronounced a national decision that really shows he's citing the U.S. Supreme Court that release on parole, there is only one ability for the government to release someone when they're an arriving alien, and that's a 212 D5A parole, which entitles one to adjustment of status, but only after the person is released. So the petitioner was only eligible for that after being released from ICE custody. So he's now eligible for adjustment of status simply by the fact that it hasn't been released from custody. That's the idea. This is an unfamiliar part of the law to me. I don't know so I'm just asking. He could not apply before while detained. Okay. It may be that we want some supplemental briefing on this question before we decide the stay motion. The government has so far, I think, not responded. Is that correct? The government has not responded? Yes, Your Honor. We have until the fourth to respond, and we will be responding, Your Honor, because that case from before Judge Kuhl has no bearing whatsoever on this case. It's not part of the administrative record, and the court lacks jurisdiction to review it, and besides, Judge Kuhl's record was an interlocutory appeal to the Board of Immigration Appeals, and the board has not certified that. The fact that you are able to apply for that form of relief doesn't mean you're eligible for it. It's a discretionary decision, and in light of the adverse credibility decision in this case, I don't think petitioner be eligible, but that's for the agency to decide, Your Honor, but we will be responding to that motion. Okay. Well, obviously, we're not going to decide a motion here on which the briefing is at the moment incomplete. Okay. Any further questions from the bench? Okay. Thank you very much. The case of Sanchez v. Wilkinson submitted for decision. Thank both sides for their arguments. Thank you, Your Honor.
judges: W. Fletcher, Miller, Hunsaker